United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MYRNA B. J.,

Plaintiff,

v.

SSA COMMISSIONER, et al.,

Defendants.

Case No. 4:25-cv-06615-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 7, 11

Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for further proceedings, including a new hearing and new decision. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, and DENIES Defendant's cross-motion for summary judgment.

## I. BACKGROUND

Plaintiff filed an application for Title II benefits on June 7, 2021, asserting disability beginning June 20, 2019. (Administrative Record ("AR") 17.) The Social Security Administration ("SSA") denied Plaintiff's application initially and on reconsideration. *Id.* Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the hearing was held on March 6, 2024, at which Plaintiff and a vocational expert ("VE") testified. *Id.*

Following the hearing, the ALJ denied Plaintiff's application on June 10, 2024. (AR 17-30.) The Appeals Council denied Plaintiff's request for review on June 13, 2025. (AR 1.)

On August 6, 2025, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl., Dkt. No. 1.) On October 28, 2025, Plaintiff filed the motion for

summary judgment. (Pl.'s Mot., Dkt. No. 7.) On December 29, 2025, Defendant filed an opposition and cross-motion for summary judgment. (Def.'s Opp'n, Dkt. No. 11.) Plaintiff filed a reply on January 12, 2026. (Pl.'s Reply, Dkt. No. 12.)

## II. LEGAL STANDARD

A court may reverse the Commissioner's denial of disability benefits only when the Commissioner's findings are 1) based on legal error or 2) are not supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). In determining whether the Commissioner's findings are supported by substantial evidence, the Court must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Under SSA regulations, disability claims are evaluated according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). At step one, the Commissioner determines whether a claimant is currently engaged in substantial gainful activity. *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at 721. If the answer is no, the claimant is not disabled. *Id.* If the answer is yes, the Commissioner proceeds to step three, and determines whether the impairment meets or equals a listed impairment under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If this requirement is met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

If a claimant does not have a condition which meets or equals a listed impairment, the fourth step in the sequential evaluation process is to determine the claimant's residual functional capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis,

despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can perform such work, he is not disabled. 20 C.F.R. § 404.1520(f). RFC is the application of a legal standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a). If the claimant meets the burden of establishing an inability to perform prior work, the Commissioner must show, at step five, that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden shifts to the Commissioner at step five. *Id.* at 954.

## III. DISCUSSION

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in discounting Plaintiff's allegations of pain and physical dysfunction; (2) the ALJ erred in evaluating the severity of Plaintiff's foot impairment at step two; (3) the ALJ's erred in failing to evaluate the medical opinion of Dr. Robert Dickman; (4) the ALJ erred in determining Plaintiff's RFC; and (5) the ALJ failed to provide a step four determination compatible with the regulations. (Pl.'s Mot. at 2.)

Plaintiff had previously applied for disability benefits, but an unfavorable decision issued on September 13, 2019, which became final. (AR 17.) Due to the prior application, the ALJ found that res judicata applied to the dates prior to the unfavorable decision, such that the relevant time period is September 14, 2019 through December 31, 2020 (the date last insured) despite Plaintiff's earlier-alleged onset date of June 20, 2019. (AR 17, 20.)

### A. Plaintiff's Credibility

First, Plaintiff alleges that the ALJ erred in failing to credit her subjective symptom testimony. (Pl.'s Mot. at 2.) In the absence of affirmative evidence of malingering, the ALJ may reject a claimant's testimony by offering clear and convincing reasons for doing so. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). While "inconsistent daily activities may provide a justification for rejecting symptom testimony, 'the mere fact that a plaintiff has carried on certain daily activities ... does not in any way detract from her credibility as to her overall disability.'" *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (quoting *Benecke v. Barnhart*, 379 F.3d 587,

594 (9th Cir. 2004)). Additionally, "[a] finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (internal quotation omitted). Thus, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotations omitted).

Here, Plaintiff contends that the ALJ improperly discounted her testimony that, in combination, her physical and mental impairments made her unable to work. (Pl.'s Mot. at 2.) Plaintiff testified that she was in a lot of pain for an entire year and not getting the help from medical providers that she needed, including MRI imaging. (AR 42.) She testified that pain from her back radiated into her leg, that she experienced significant pain in her ankles and feet, and that she often felt like her feet "went to asleep." (AR 42, 48.) Plaintiff testified that she had difficulty walking for long periods before needing to sit down due to back and foot pain, and foot numbness. (AR 48.) She testified that she has difficulty sitting for extended periods due to back pain, and that she experienced difficulty bending at the waist. (AR 42, 48.) In her function report, Plaintiff stated that her conditions forced her to walk with a limp and walk slowly. (AR 339.) She stated that if she does not take precautions with walking, her feet swell, her legs ache, and her back hurts. (AR 45, 339-47.) Additionally, Plaintiff reported pain in her shoulder that limited her movement and pain from tendonitis. (AR 51.) Plaintiff also reported that she experienced psychological symptoms that negatively impacted her life, including that she had anxiety and trouble sleeping. (AR 49.)

Plaintiff contends that the objective medical evidence corroborates her allegations. (Pl.'s Mot. at 5.) A November 2019 MRI of the left ankle showed abnormalities, including mild edema within the sinus Tarsi, and the diagnostic impressions were plantar fasciitis accompanied by moderate plantar calcaneal enthesophyte, mild sinus Tarsi syndrome, and increased valgus hindfoot angle. (AR 610-11.) A December 2020 EMG showed tarsal tunnel syndrome on the right side with no way to rule out small fiber neuropathy. (AR 666.) And while shortly after the period

at issue, an x-ray of the lumbosacral spine showed degenerative changes (AR 764-65) and an MRI of the lumbar spine showed moderate foraminal narrowing and annulus tears and facet arthropathy that may have been contributing to Plaintiff's pain syndrome (AR 771-73). Plaintiff contends that there is no evidence of an intervening acute injury to suggest that these degenerative changes were not present during the period at issue, and, therefore, these objective findings provided an objective basis for Plaintiff's alleged symptoms. (Pl.'s Mot. at 5.)

In opposition, Defendant argues that the ALJ reasonably discounted Plaintiff's self-reports because they conflicted with the fact that she experienced relief with conservative treatment during the relevant period. (Def.'s Opp'n at 3 (citing AR 27).) The ALJ contrasted Plaintiff's allegations of pain and limitation in her ankles with her reports of improvement during the relevant period. (AR 27 (citing AR 985, 987, 990, 998, 1008).) Specifically, in late 2019, Plaintiff informed her provider that she had "good relief by wearing a compression bandage over her ankle" and that she was "relatively asymptomatic at this time with her bandage . . . ." (AR 1008.) In the following months, Plaintiff "sought only routine care for issues not related to her disability claim." (AR 27 (citing AR 990 (October 2020, ear and body aches), 998 (June 2020, earache)).) Also, while Plaintiff complained of ankle and foot pain on December 4, 2020, her provider only recommended orthotic inserts and night splints. (AR 27, 987.) The ALJ generally noted that Plaintiff's treatment was conservative and limited to physical manipulation and therapy, a home exercise program, and over-the-counter pain medications. (AR 27.)

While the ALJ acknowledged that Plaintiff was alleging some new conditions in connection with this application, she found that those conditions were "not established" prior to December 31, 2020, the date of last insured. (AR 20.) Even so, Plaintiff does have adequate objective medical evidence during the relevant period to support that she was experiencing some significant pain, including the MRI. (AR 610-11.) Indeed, the medical records in the months following the relevant period show that her care was escalated due to her reports of pain, and she underwent a right foot tarsal tunnel release and right foot plantar fasciotomy in March 2021, which the ALJ acknowledged. (*See* AR 21.)

"The clear and convincing standard is the most demanding required in Social Security

cases." *Moore v. Comm'r of Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002); *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore,* 278 F.3d at 924) (same). Given that Plaintiff underwent surgical procedures to address the foot pain experienced during the relevant period bolsters her credibility. To find that Plaintiff lacked credibility because she did not have those surgical procedures until three months after the relevant period does not satisfy the high bar for rejecting a claimant's symptom testimony. *See Revels,* 874 F.3d at 668.

Accordingly, the Court finds that the ALJ erred in discounting Plaintiff's subjective symptom testimony.

**B. Step Two Determination**

Second, Plaintiff contends that the ALJ failed to properly evaluate the severity of her foot impairment at step two (Pl.'s Mot. at 10.) "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)). As a result, "[a]n impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290).

For the same reasons described above, the ALJ erred in her step two evaluation of Plaintiff's foot impairment, which required surgical intervention immediately following the relevant period. *See* discussion, *supra,* Part III.A.

**C. Medical Opinion**

Third, Plaintiff argues that the ALJ erred in evaluating the medical opinion of qualified medical evaluator Dr. Robert Dickman. (Pl.'s Mot. at 12.)

Under the updated regulations, the SSA "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." 20 C.F.R. § 416.920c(a). Instead, each medical opinion's persuasiveness is evaluated based on various factors, the most important of which are "supportability" (the extent to which the medical opinion is supported by relevant and objective medical evidence) and "consistency" (the extent to which a medical opinion is consistent with evidence from other medical and nonmedical sources).

*Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). Neither supportability nor consistency is controlling; they are considered in relation to each other and to any other factors an ALJ finds relevant. 20 C.F.R. § 404.1520c(b)(2).

While a medical source's relationship with the claimant is to be considered, "the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods,* 32 F.4th at 791. An ALJ, however,

> cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.

*Id.* at 792 (internal quotation omitted).

Here, Plaintiff alleges a disability onset date of June 20, 2019. (AR 17.) On June 28, 2019, Dr. Dickman opined that Plaintiff's impairments limited her to less than two hours of standing and walking in an eight-hour workday, she could rarely lift of up to ten pounds, she needed to alternate sitting and standing, she could occasionally reach, and she had restricted postural movements. (AR 532-45.) Dr. Dickman further opined that Plaintiff would be off tasks greater than 25% of a typical workday and that she would be absent from work an average of two days per month. (AR 544.) Plaintiff argues that the ALJ failed to evaluate this opinion on the grounds that it was not relevant to the time period at issue (September 14, 2019 through December 31, 2020). (Pl.'s Mot. at 12 (citing AR 28).)

In opposition, Defendant argues that the ALJ correctly found that Dr. Dickman's opinion was not relevant to the period at issue. (Def.'s Opp'n at 6.) Defendant relies on *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008), for the proposition that "[o]pinions from before the start of the alleged period of disability are of limited relevance." (Def.'s Opp'n at 6.) This is a mischaracterization, because *Carmickle* stands for the proposition that medical opinions that "predate the alleged onset of disability" are of limited relevance, rather than of no relevance. *See* 533 F.3d at 1165.[1] There, the Ninth Circuit found that a medical opinion

[1] Here, there is a stark difference between the alleged onset date and the relevant period of disability, as the former predates the latter by almost three months.

was correctly afforded little weight, because it was provided before the claimant's accident that caused the alleged disability, and that a prior medical opinion has "especially" limited relevance "where disability is allegedly caused by a discrete event." *Id.* Here, however, the examination occurred and the opinion furnished less than three months before the relevant period and after the alleged onset date. (AR 532-546.) Furthermore, this is not a situation where Plaintiff's alleged disability was caused by a discrete event; rather, her physical limitations allegedly worsened since her prior disability application, rendering *Carmickle* factually distinguishable. (*See* AR 20.)

**i. Supportability**

An ALJ's supportability analysis cannot consist of a mere summary of conditions. Rather, an ALJ must "build an accurate and logical bridge from the evidence to [her] conclusion." *Moy v. Bisignano*, 142 F.4th 546, 552 (7th Cir. 2025) (quoting *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000)). Multiple courts in this circuit, including some in this district, have required that the ALJ draw a logical bridge to enable the reviewing court to meaningfully review the ALJ's findings. *See, e.g., Perry v. Berryhill*, No. 15-CV-04566-DMR, 2017 WL 840382, at *6 (N.D. Cal. Mar. 3, 2017) (quoting *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002)); *Lizer v. Berryhill*, 363 F. Supp. 3d 1097, 1102 (N.D. Cal. 2019) (quoting *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) (logical bridge required to afford meaningful review of ALJ's decision); *Teresa P. v. Comm'r of Soc. Sec.*, No. 24-CV-100-AJB-DDL, 2025 WL 326160, at *4 (S.D. Cal. Jan. 29, 2025), *report and recommendation adopted,* No. 24-CV-00100-AJB-DDL, 2025 WL 590373 (S.D. Cal. Feb. 24, 2025) (quoting *Perry,* 2017 WL 840382, at *6); *Gomez v. Bisignano,* No. 1:25-CV-00966-EGC, 2026 WL 2532004, at *6 (E.D. Cal. Aug. 27, 2026) (failure to draw logical bridge rendered decision not supported by substantial evidence).

Here, the ALJ dismissed Dr. Dickman's opinion with others that predated the relevant time period without regard for the fact that the opinion was furnished during the alleged period of disability, and less than three months before the relevant period. (*See* AR 28.) More importantly, the ALJ completely dismissed the opinion without any discussion of supportability. Indeed, the ALJ could not have possibly addressed supportability, because Dr. Dickman was not mentioned by name anywhere in the decision; rather, the ALJ merely listed the exhibit number of his opinion

United States District Court
Northern District of California

along with several others that predated the relevant period.

In opposition, Defendant argues that the ALJ addressed supportability and consistency, but Defendant is conflating supportability with consistency. (*See* Def.'s Mot. at 7.) The results of that visit are properly classified as "evidence from other medical sources" and, therefore, pertain to the consistency analysis. 20 C.F.R. § 404.1520c(c). They are irrelevant to supportability, which asks only whether the results of Dr. Dickman's examination support Dr. Dickman's opinion. *Id*. The ALJ's failure to address any of the results of Dr. Dickman's examination, let alone explain the supportability of that medical opinion, constituted error. *See* 20 C.F.R. § 404.1520c(b)(2); 20 C.F.R. § 416.920c(c)(1).

**ii. Consistency**

The Court also finds that the ALJ's consistency analysis to be fatally flawed. Generally, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). While the ALJ need not analyze the entire medical record, the points of reference must be sufficiently many to adequately characterize the record as a whole. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) ("a court must consider the record *as a whole*, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion.") (quoting *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir.1993)) (emphasis added). The use of the plural in referring to "other medical sources and nonmedical sources" suggests that the points of comparison must, at minimum, be multiple. *See* 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ did not individually address the Dickman opinion at all. (*See* AR 28.) Instead, the ALJ decided that it served no relevance solely because it predated the relevant period. *Id.* This finding is contrary to Ninth Circuit legal authority that medical opinions prior to the alleged onset day may be of "limited relevance." *See Carmickle*, 533 F.3d at 1165. Even opinions of limited relevance must be individually weighed, rather than being discounted out of hand. *See id.*

Accordingly, the ALJ erred in finding Dr. Dickman's opinion unpersuasive solely because

it predated the relevant period. On remand, the ALJ is required to evaluate and explain the supportability of Dr. Dickman's opinion and to reassess and provide meaningful explanation—including the relevant record citations— regarding the consistency of his medical opinion pursuant to 20 C.F.R. § 416.920c(c)(1).

**D. RFC**

Fourth, Plaintiff argues that the ALJ failed to adequately evaluate Plaintiff's RFC due to the absence of any mental work restrictions, which conflicted with the limitations assessed at step two of the sequential evaluation. (Pl.'s Mot. at 15.) The Ninth Circuit has held that an ALJ erred when not considering a claimant's mild mental limitations arising from a mental impairment when he was determining the claimant's residual functional capacity. *Hutton v. Astrue*, 491 Fed.Appx. 850, 850-51 (9th Cir. Dec. 5, 2012). There, the Ninth Circuit found that "while the ALJ was free to reject [the claimant's] testimony as not credible, there was no reason for the ALJ to disregard his own finding [the claimant's] nonsevere" mental impairment caused some "mild" limitations. *Id.* at 851. A number of district courts in this circuit follow Hutton. *See Carlson v. Berryhill*, No. 18-CV-03107-LB, 2019 WL 1116241, at *17 n. 429 (N.D. Cal. Mar. 10, 2019) (collecting cases).

In addition to the step two error noted above in connection with Plaintiff's foot impairment, the Court finds that the ALJ also erred in formulating the RFC by not taking Plaintiff's mild mental limitations into account and must do so on remand.

**E. Step 4 Determination**

Finally, Plaintiff argues that the ALJ's step four determination was not compatible with the regulations because the ALJ noted that Plaintiff had worked these jobs within the last 15 years, and the regulations changed prior to the ALJ's decision to include only work performed during the last five years. (Pl.'s Mot. at 17.)

The Court declines to address this argument, because the ALJ's error at step two requires remand to step two, which would affect the RFC and potentially the determination at step four.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment. Because it is not clear

from the record that the ALJ would be required to find Plaintiff disabled if all the evidence was properly evaluated, remand for further proceedings is appropriate. On remand, the ALJ must hold a new hearing and properly evaluate the evidence based on applicable law and consistent with this order.

IT IS SO ORDERED.

Dated: September 30, 2026

KANDIS A. WESTMORE
United States Magistrate Judge